# GIRARD INSURANCE AND TRUST COMPANY *v.* COOPER.

## APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 164. Argued March 23, 1896. — Decided April 20, 1896.

A coal and railway company contracted with C. to construct a building for it in the Indian Territory. After the work was begun a receiver of the property of the company was appointed under foreclosure proceedings. This building was not covered by the mortgage. C. was settled with for work up to that time, and all further work was stopped, except such as might be necessary for the protection of the building, which was to be done under order of court. ·An order was issued for roofing, which C. did, and then continued work on the building without further authority from the court. The receiver, on learning this, notified him to stop and make out his bill to date of notice; said that he would furnish designs for further work to be done; and asked C. to name a gross sum for doing it. C. stopped as directed, the designs were furnished, and C. named the desired gross sum. No further order of court was named, nor was any contract signed by the receiver; but the architect employed by the receiver drew up a contract and specification, and the work was done by C. in accordance therewith with the knowledge and approval of the receiver. The receiver having declined to sign the contract, or to make payments thereunder, C. filed a petition in the foreclosure proceedings for payment of the amount due him. Thereupon a reference was made to a master, who reported in favor of C. The court adjudged the·claim to be a valid one, entitled to preference, and the receiver was ordered to pay the amount reported due ; which decree was, on appeal, affirmed by the Circuit Court of Appeals. *Held*, that there was no error in the court's ordering C.'s bill to be paid as a preferred claim, as the work had been commenced before the receivership and was done in good faith for the benefit of the company and the receivers, and as the building must either have been finished or the work already done become a total loss to the company; that it appeared to have been constructed for the accommodation of the officers of the road, and in other respects in furtherance of the interests of the road, and was an asset in the hands of the receivers, which might be sold, and the money realized therefrom applied to the payment of the claim; and that the fact that it was not covered by the mortgage rendered it the more equitable that the proceeds of the sale should be applied to the payment of the cost of its construction.

THIS was a petition by the firm of W. H. Cooper & Son, originally filed in the United States court for the Indian

Territory, against Edwin D. Chadick and Francis I. Gowen, receivers of the Choctaw Coal and Railway Company, a corporation created under the laws of the State of Minnesota, with a right, among other things, to build and operate railways and to own and develop coal mines, and which had been authorized by acts of Congress approved February 18, 1888, and February 13, 1889, to construct a railway within the Indian Territory.

The company having become embarrassed, Chadick and Gowen were, on January 8, 1891, appointed co-receivers, and continued to act as such until August 28, 1891, when an order was made giving said Chadick a leave of absence for one year, and in the mean time vesting all the power of both receivers in Gowen for the period named. In connection with the building and operation of its railway and the development of its mining industries, the company, in May, 1890, undertook the erection at South McAlester, in the Indian Territory, of a building to be used as a hotel and offices for the company; and on May 23, 1890, Chadick entered into a contract with Cooper & Son for the furnishing of the greater part of the work and material needed in the erection of the building, which was called the Kali-Inla Hotel. This contract was signed by W. H. Cooper & Son, and by H. W. Cox, architect, for E. D. Chadick.

It seems that Chadick, at the instance of the board of directors, had gone before the Judiciary Committee in Congress, and said that, if Congress would locate a United States court at South McAlester, the company would provide accommodations for the court and its officers, free of cost to the United States, and that Congress, accepting the proposition thus made, designated South McAlester as one of the points for holding court in the Territory.

At the beginning of the receivership (January 8) Cooper & Son were settled with in full, and all work was to be stopped, except such as was necessary to protect the building, which work was to be carried on under the order of the court. Shortly thereafter, a petition was presented to the court for permission to enter into a contract for the roofing of the

building, to protect it from the weather, and an order to that effect was obtained from the court before the work was begun. This appears to have been the only order obtained for any further work upon the building, but after this job had been finished, Cooper & Son continued their work without further authority from the court.

In June, 1891, Mr. Gowen, learning that Cooper & Son had continued working upon the building, wrote Mr. Cooper the following letter, addressed to Cooper & Son, and signed by both receivers :

" SOUTH McALESTER, IND. TER., *June* 3, 1891.
" Messrs. W. H. Cooper & Son,
          " *South McAlester, I. T.*
   " GENTLEMEN : Under direction of the court we notify you to stop all work on the Kali-Inla Hotel from this date, and make out your bill for the work done up to and including to-day.

   " We will then furnish you with designs and directions as to the work to be done, and you will name a gross sum for the performance of the same, which we will submit to the court for their approval or disapproval.
                    " EDWIN D. CHADICK,
                    " FRANCIS I. GOWEN,
          " *Receivers Choctaw Coal and Railway Co.*"

Upon receipt of this letter Cooper & Son ceased work upon the building, and made out a bill or statement of the sum then due them, which was approved by the auditor of the receivers.

On or about June 7, H. W. Cox, who acted for the receivers as supervising architect, furnished Cooper & Son with details and specifications of the work required to be done to fit the building for occupancy by the court and officers of the company, which Cooper & Son agreed to do, by letter written to Mr. Chadick June 24, 1891, for the sum of $10,250, allowing the company $2500 for the value of material on hand. Their proposition was not formally accepted by the receivers, and

no order of court was obtained authorizing it, but on July 7, 1891, a contract was prepared by Cox, to which were attached certains plans and specifications. The contract was not signed by any one, but the plans and specifications were signed by W. H. Cooper & Son and by "H. W. Cox, supervising architect," and the contractors proceeded with the work therein called for, with the knowledge and approval of Chadick, the receiver who then had immediate charge of the work being done on the railway line.

At the hearing, the master, who was also clerk of the court, stated that the plans and specifications were submitted to him and to the judge of the court to see if the court apartments suited them, and whether they had any suggestions as to the arrangement of the rooms, but no order was made by the court as to the price to be paid for the work, or as to the manner of payment; and that neither he nor the court knew anything as to what the price of the work was. The contract of July 7 was not signed, accepted or approved by either receiver, and was not submitted to Mr. Gowen until the 29th day of August, 1891, which was the first knowledge he had that any such contract was in existence. Cooper then presented his contract to Mr. Gowen, as a prerequisite to his permitting the marshal to take possession of the rooms which had been fitted up for the clerk and marshal's offices. At this time Cooper did not ask for any pay and was not promised any payment, and all that he insisted upon was that his contract should be signed. Mr. Gowen refused to sign the contract because the work had not been authorized by the court, and because he was not satisfied that the price named in the contract was proper and reasonable, but promised Mr. Cooper that he would undertake to ascertain whether the price named was a proper one; and to this end he secured the services of an architect, and had him make a thorough examination of the building with a view of determining the value of the work done and materials furnished.

Cooper & Son made out their bills for the amount claimed to be due them for work done since June 3, which was certified as correct by the architect having supervision of the work

done in remodelling the building. For the purpose of securing payment of the sums claimed to be due them, the contractors filed a petition in the foreclosure proceedings, setting forth the facts and praying for an order upon the receivers, directing them to make payment of the sums claimed to be due, and further praying that a lien in their favor be put upon the building, and for other relief. To this petition Gowen, as receiver, and the Girard Life Insurance, Annuity and Trust Company, as trustee, filed answers, and thereupon the court, on October 13, 1891, entered an order, which was drawn and consented to by the receiver and the trustee of the bondholders, "that the claim of W. H. Cooper & Son be referred to the master to take testimony thereon, and to ascertain the amount justly and equitably due, as the true value of the work done and the materials furnished by them upon and for the Kali-Inla Hotel building at South McAlester, and that receiver's certificates bearing 7% interest be issued and delivered to them for one third of the amount so found to be due, and to sell and deliver in settlement thereof lumber at the market price thereof for one third of said amount and the balance in cash to be borrowed on certificates, as hereinafter authorized."

Upon a hearing by the master in pursuance of this order he made a report, finding a balance due Cooper & Son of $14,919.37, and also made certain findings of fact and law printed in the margin,[1] to which report appellants filed excep-

---

[1] "FINDINGS OF FACT.

"1. I find that the vouchers above mentioned are valid, and were issued in good faith by agents of the receivers, having authority so to do; and that W. H. Cooper & Son were given credit upon the books of said company for the amounts so vouchered, and were charged with such vouchers; and that said amounts constituted and became a debt from the receivers to W. H. Cooper & Son, due and payable upon date of issuance.

"2. I find that the contract under and by virtue of which all work was done and materials furnished upon Kali-Inla Hotel from and after June 3, 1891, and the specifications, plans and drawings furnished therewith were executed, furnished and delivered by agents of the receivers having authority so to do, and under the special direction and approval of the receivers themselves and this honorable court.

tions. Cooper & Son thereupon moved the court to strike out these exceptions, upon the ground that the report of the special master was conclusive upon the facts involved, and binding upon the receiver, and also because the Girard Life Insurance etc. Company was not a party to the proceeding and had no interest therein.

Upon the hearing of this motion to strike the exceptions

---

"3. That the work performed and material furnished were so furnished and performed by W. H. Cooper & Son under and by virtue of and in reliance upon the contract aforesaid, and that the receivers knew that said W. H. Cooper & Son were so performing work and furnishing materials under and by virtue of said contract, and in full reliance thereon; and with such knowledge approved of the work of said Cooper & Son, and managed and directed said Cooper & Son in the progress of said work, and have now received the benefit of said work, and are in the possession of said hotel.

"4. I find that said W. H. Cooper & Son did all of the work done under the contract of July 7, 1891, in strict accordance with the details, plans and specifications furnished them with said contract by said receivers, and are entitled to the contract price.

"5. Further, that the extra work charged for was done under and by virtue of a provision in said contract, and at the suggestion of the supervising architect, furnished by the receivers, and with his approval; and that the prices charged for such extra work and materials furnished are reasonable and true.

"FINDINGS OF LAW.

"1. I find, as a matter of law, that the vouchers hereinbefore mentioned are in the nature of accounts stated, and having been acquiesced in by both parties cannot now be impeached by either party except through allegation and proof of fraud or mistake.

"2. I find, as a matter of law, that the receivers having had full knowledge of the fact that W. H. Cooper & Son were doing work and furnishing materials on Kali-Inla Hotel, in reliance upon contract of July 7, 1891, and that the receivers having encouraged and countenanced their work thereunder and furnished them with a supervising architect to superintend the same, and that the receivers having received and gone into possession thereof, are now estopped from denying their obligations to said Cooper & Son under said contract, and that their only defence to that part of the claim of said Cooper & Son is in showing that the work performed by said Cooper & Son and materials furnished by them were not in accordance with the details, plans and specifications attached to said contract.

"WILLIAM NELSON,
"*Special Master.*"

from the files, the court held that the order of October 13, 1891, was conclusive as to the validity of the claim of Cooper & Son, and the court, having referred the claim to a special master with instructions to find the amount due, and having further ordered that the receiver should pay the amount so found to be due, granted the motion and entered a final decree in favor of Cooper & Son against the receivers in the sum of $14,749.45, costs and interest.

A rehearing having been demanded by the receivers and also by the Girard Life Insurance &c. Company, and denied, they appealed to the Circuit Court of Appeals for the Eighth Circuit, by which court the case was heard and the decree of the court below affirmed, with costs, in so far as it awarded judgment for the sum therein named, and the case was remanded with directions " to enter an order directing the mode and time of payment, such as the court may be advised is required by the equities of the case, in conformity with the opinion of this court."  4 U. S. App. 631.

Whereupon the Life Insurance Company and the acting receiver appealed to this court.

*Mr. Samuel Dickson,* (with whom was *Mr. J. W. McLeod* on the brief,) for appellants.

In view of the statement of the master and of the acts of the parties, it is indisputable that the court never gave precedent authority to accept and execute the contract, and with all deference to the Circuit Court of Appeals, it is submitted with great confidence that one of the receivers, at least, never assented to the contract. Under these circumstances, the contention of the trustee and of Mr. Gowen was most reasonable. No attempt was made to throw out the claim altogether, and all that was asked was that only so much should be charged upon the trust estate as was justly and equitably due, or, in other words, that the recovery should be upon the basis of *quantum meruit.*

This was the basis adopted in the leading case of *Vanderbilt v. Little,* 43 N. J. Eq. 669, where a most elaborate opin-

ion was delivered by Mr. Justice Magie, and the contract reformed and compensation allowed upon an equitable basis. This case is cited with approval by Mr. Justice Jackson in *Chicago Deposit Co.* v. *McNulta*, 153 U. S. 554, and fully justifies the position taken by the appellants before the master and in the courts below.

As the claimants have refused to accept compensation upon the basis of what their work was actually worth, it seems entirely proper and justifiable to point out that they are not legally entitled to anything. The ruling in *Fosdick* v. *Schall*, 99 U. S. 235, which displaced liens of record in favor of certain equitable claimants, was avowedly made as an innovation, and was justified upon the score of necessity. Acting under its authority, courts having supervision of receivers have felt warranted in sanctioning expenditures in the way of railroad extensions and betterments, which have resulted in sweeping away the entire *corpus* of the mortgaged property, which the courts had undertaken to conserve and protect.

It is not proposed to question the plenary power of the court where the addition or betterment is strictly appurtenant to the mortgaged property and the fruit of the expenditure becomes subject to the lien of the mortgage. In the land grant cases, of which the St. Paul and Pacific is a type, the precedent set by Judge Dillon may be technically justifiable, though in many cases the practical result has been most disastrous, as in the *Miltenberger case*, 106 U. S. 286; or in *Stanton* v. *Alabama & Chattanooga Railroad*, 2 Woods, 506, where the receivers' certificates authorized to complete the road to Chattanooga exceeded the value of the entire road. But the captain cannot put a bottomry bond on the ship to carry out a contract having no relation to the vessel, and the court below had no power to spend the money of the mortgage creditors of a railroad to build an hotel or court house upon land belonging to others, and to which the railroad company and the receivers had no title. If the judge had even proceeded judicially, and received testimony and called upon the receivers to justify the proposed construction, he might, perhaps, have elicited and found facts to warrant his

action, but it appears affirmatively, on the record, that the question of cost and the terms and conditions of the contract were never considered, and no action in court was ever taken. Something more than this is necessary to warrant the diversion of trust funds and the cancellation of liens of record.

The language of Mr. Justice Brewer in *Kneeland* v. *American Trust Co.*, 136 U. S. 89, 97; of Mr. Justice Blatchford in *Union Trust Co.* v. *Illinois Midland Railway*, 117 U. S. 434, 477; and of Mr. Justice Jackson in *Chicago Deposit Vault Co.* v. *McNulta*, 153 U. S. 554, has been understood to mean that mortgage securities are not to be postponed or confiscated except in cases of overruling necessity, ascertained and adjudicated after careful examination and patient hearing. No such necessity did, in fact, exist in the present case; but if it did, it was never made to appear, and was never judicially adjudged and decreed.

*Mr. Arthur G. Moseley* for appellees.

MR. JUSTICE BROWN, after stating the case, delivered the opinion of the court.

There can be no doubt of the correctness of the master's finding with regard to the work done by Cooper & Son prior to June 3, 1891. This work was done under a contract made May 23, 1890, between Cooper & Son and Chadick, who was at the time general manager of the Choctaw Coal and Railway Company, and who, by authority of the board of directors, had arranged with the Judiciary Committees of Congress for the location of the United States court at South McAlester, upon condition that the company would provide the officers of the court, free of all cost, with suitable quarters. While the contract was not signed by Chadick, but by Cox, the architect, it was so signed under special authority from Chadick, and it provided that the work was to be done to the satisfaction and under the supervision of the architect. Bills were rendered for this work, which were certified by the chief engineer and assistant manager of the company. Mr. Chadick

testified that the appellee's claim for this work is just and correct, and in a letter of June 19, he says that he is unable to settle the amount due, but expects to be able to do so early in July.  It is true that the company, in December, 1890, was put into the hands of receivers; but, with full knowledge of all that was being done, they allowed the work to continue without interruption, until June 3, 1891, and were justly held to be liable for what had been done up to that time, according to the terms of the contract.  A settlement appears to have been had on January 8, and some of the subsequent work was done without a prior order of the court, but no objection was ever made to it by the receivers upon that ground prior to June 3 when the work was stopped.

The principal matter in dispute relates to the proper interpretation of the order of October 13, 1891, referring the claim of Cooper & Son to the master, "to ascertain the amount justly and equitably due as the true value of the work done and materials furnished," and to the refusal of the master, under the terms of this order, to permit the appellants to prove the cost and value of the building, without reference to any contract.  In this connection, the master found that the contract under which the work was done was executed by agents of the receivers, having authority so to do, and under special direction and approval of the receivers themselves, and of the court; that the work was performed and materials furnished in reliance upon this contract; that the receivers knew of this, and with such knowledge approved of this work, received the benefit of it, and took possession of the hotel; and also that the work was done in strict accordance with the plans and specifications.  While the findings of the master in this particular are not absolutely binding upon the court, there is a presumption in their favor, and they will not be set aside or modified in the absence of some clear error or mistake. *Camden* v. *Stuart*, 144 U. S. 104, 118.

On June 3 the receivers ordered the work to be stopped, and a bill to be rendered for what had been done up to that time, saying that the receivers would " then furnish you with designs and directions as to the work to be done, and you

will name a gross sum for the performance of the same, which we will submit to the court for their approval or disapproval." The matter rested here until June 23, when, as the result of a conference between Mr. Cox, the architect, and Major Nelson, the master in chancery, the receiver addressed the following letter to Cooper & Son:

"GENTLEMEN: We have been advised by Maj. William Nelson, master, of the following order of the United States court: 'You are hereby directed to finish up court-room, all the offices on lower floor of hotel building, and also such rooms on the second floor as may be necessary, in accordance with estimates to be hereafter furnished.'"

In the meantime, and in consequence of the same conference, Chadick instructed the architect, Mr. Cox, to make the plans and specifications of what was required for the accommodation of the court, and send them up to Muscogee for the inspection of Major Nelson, the master. He sent them there on June 6. The master appears to have submitted them to the judge and marshal, who approved of them, and directed the work to be done, though no order of court was entered to that effect, and no question of price was considered, this matter being left to the receivers. Upon the return of these plans and specifications to Mr. Cox, the architect, he drew up a contract in compliance with them, sent one copy to Mr. Cooper, with specifications annexed, and another copy to Mr. Chadick's office. Cooper & Son, who appear to have already seen the plans and specifications, addressed Mr. Chadick a letter under date of June 24, agreeing to do the work for $10,250. Chadick testified that his recollection was that the receivers accepted the proposition, though he seems never to have formally answered the letter. But however this may be, a contract was drawn up bearing date July 7, and signed by Cooper & Son, and by Cox, as supervising architect, not at the foot of the contract itself, but at the end of the specifications, which followed the contract. Mr. Cox testified that Chadick ordered the work to go ahead, and knowing the amount, he inserted it in the contract; that Mr. Chadick came

to the building after this, told him what the court wanted and approved of, and ordered him to go ahead with it. In the same connection, Chadick testified that the contract was drawn up by Cox and submitted to him; that he approved it, not formally, because Mr. Gowen was not there, but looked it over and thought it was just and right. Mr. Cox was the supervising architect, appointed first by the manager and continued by the receivers, and all the contracts for buildings and specifications for buildings before this had been drawn by him. . This was in the ordinary line of his business and duty. "I knew that Mr. Cooper was working upon this building in reliance on this contract and in accordance with its terms; I supposed these specifications would govern the settlement of it; Mr. Gowen knew of this contract at the time.; he was present when it was given to me in the early part of July." Mr. Cooper also testified that he made his bid in compliance with directions from Mr. Chadick; that he, Chadick, accepted it and told him to go to work, which he did, and completed the work according to the contract, plans and specifications furnished him by Mr. Cox. It further appears that after the contract was completed a bill was made out showing an amount due of $11,092.74, and that Mr. Cox certified to the correctness of the account.

In this connection Mr. Gowen, the principal witness for the appellants, states that, shortly after his appointment, permission was asked of the court to enter into a contract for the roofing of the building, and an order procured to that effect, and that he concurred in the making of a contract for this work; that he gave the matter no further consideration until March, when his attention was called to the fact that the inside work was still going on; that he then called Mr. Chadick's attention to the matter, who said that nothing was being done. beyond making the building weathertight, and undertook to have authority procured to do the necessary work in closing the building. Subsequently, upon Chadick's representations that their offices were so cramped as to greatly interfere with the efficient transaction of business, he agreed to the fitting up of quarters in the hotel building, and after

consulting as to the amount of room required, Chadick undertook to secure the necessary order of the court.

Upon the occasion of his next visit, which was in the latter part of May, he learned that the work was still progressing, and had an altercation with Mr. Chadick upon the subject, in which he reminded him that he had undertaken to have the work entirely stopped, to which Mr. Chadick stated that he thought he would be able to make an advantageous use of the building upon its completion, and that he had assumed the responsibility for the continuance of the work, although against Mr. Gowen's wish. The result of this conversation was the stoppage order of June 3, which was designed to prevent Cooper's entering into any further arrangement without his concurrence and the prior approval of the court. He further stated that he never saw or heard of the letter of June 24 of Cooper & Son, proposing to do the work for $10,250, although he knew and saw that work upon the court-rooms and offices was going on, and was informed by Mr. Chadick that this was being done by direction of the court; and that he believed that Cooper was going on with the work without furnishing an estimate or making any contract, as had been the case heretofore, and felt certain that Mr. Cooper would not be allowed any excessive sum; that the first intimation he had of the existence of the contract was on August 29, when he was asked to sign such contract as a prerequisite to Mr. Cooper's allowing the marshal to take possession of the rooms fitted up for the court and its officers; he declined to sign the contract; never promised to pay Mr. Cooper the amount claimed, because he was not satisfied that the price named therein was a proper one, and that he subsequently obtained an appraisement by builders of his own employment, who reported that the charges were grossly excessive. He further stated that he never gave Mr. Cox authority to bind the receivers by estimates or contracts such as this

It seems that, near the end of August, when Mr. Cooper had this conversation with Mr. Gowen, he was told there was going to be a change in the administration; that Gowen was going to take charge as managing receiver; that he was

reluctant to turn over the building until he had some assurances of his money, and so notified the receivers; but, as he says, upon the assurance of Mr. Gowen that it would be only a matter of a few days when he would have his money, he allowed them to take possession of the building. The statement in this particular is confirmed by McLoud, the attorney of the Insurance Company, who advised Mr. Cooper that he would lose no right by giving up possession of the building.

On October 8, this petition was filed, alleging that the work subsequent to June 3 was done by virtue of direct authority from Messrs. Chadick and Gowen and Major Nelson, the master in chancery, and in compliance with the specifications signed by Cooper & Son and Cox. The answer of Gowen denied the contract of July 7, though it admitted an arrangement made with Mr. Chadick, with the approval of the judge and special master, to make certain alterations and additions to the hotel building, to fit it up for a court-room and the rooms necessary for the officers of the court.

In this state of the case, and on October 13, Mr. Gowen, as receiver, and the Life Insurance Company, by its attorney, appeared before the court and submitted to it the so-called Ardmore order, which was entered by the court with the consent of all the parties. This order, upon its face, is undoubtedly susceptible of the interpretation put upon it by the appellants, and authorized the master to receive testimony as to the actual value of the work done and materials furnished, irrespective of any contract between the parties; and yet in view of the antecedent facts it does not seem probable that the court thereby intended to rule out all evidence of the contract. The petition of Cooper & Son relied upon their arrangement with Chadick as a contract. The answer denied the contract, and under these allegations it can scarcely have been intended by Cooper & Son to waive entirely the benefit of such contract, if it existed. In fact, it would appear that, prior to this order, it had been determined by the court that such contract was made, since in the final decree, which was entered on January 19, 1892, it is said "that in the order there made October 13, 1891, the court, *upon the evidence then*

*adduced,* recognized and declared the validity of the claim of W. H. Cooper & Son," and that it was not the intention of the court to confine Cooper & Son to a *quantum meruit* is patent from the further clause of such decree, " that it being stated by receivers that they were entitled to certain credits upon said account, the court referred the said claim to the special master, with instructions to ascertain the amount due upon said claim, *the validity of which had been adjudged by the court."*

If such contract existed, was within the competency of the parties, and was proven to the satisfaction of the court, it superseded the necessity of introducing testimony as to the actual value of the work done.

We think the testimony fully justified the master in his finding that a contract had been made with Mr. Chadick for the work. The stoppage order of June 3 indicated an intention on the part of the receivers to furnish Cooper & Son with further designs and directions as to the work to be done, for which work they anticipated a bid, and agreed to submit the same to the court for its approval or disapproval. Within a few days thereafter, plans and specifications, furnished by the architect of the receivers, with a notice that the court had ordered the court-room, all the offices on the lower floor of the hotel building, and also such rooms on the second floor as might be needed, to be finished up, were sent to Cooper & Son ; and after an examination of the plans and specifications, they made a bid for a certain amount, which Chadick, acting for the receivers, accepted verbally. Cooper & Son thereupon signed the plans and specifications, with the architect, and proceeded to do the work in reliance upon the contract. Whether the contract was actually signed by the receivers was quite immaterial, so long as the terms of the contract were agreed upon and understood between the parties, and, as observed by the court below, " when Cooper & Son were directed to proceed with the work called for by the plans, the contract between the parties was closed, and the preparation and signing of a formal writing would only have called into existence additional evidence of the fact."

It is said, however, that the contract. being for the con-
struction of a large building, not necessary to the company in
the conduct of its regular business, and upon land which did
not belong to the company and was not covered by the lien
of the mortgage, was such a one as required a prior order of
the court, and that no such order was given in this case.
Assuming this to be so, the objection is a purely technical one.
It appears that the plans and specifications were laid before
the judge and other officers of the court; were approved by
them, and the work directed to be done, though no order of
the court was formally entered. Subsequently, the court,
with full knowledge of the facts, and "upon evidence then
adduced," declared the validity of the claim and referred it to
the master to ascertain the amount due. We think this is a
sufficient ratification of the act of Mr. Chadick in directing
the work to be done; and, so far as the price is concerned, his
action, or that of his authorized agent, Cox, is binding in the
absence of fraud or mistake. It certainly would have been
more satisfactory if the court had been fully informed of the
terms of the contract, and especially of the price to be paid,
and had given the receiver the requisite authority before he
entered into it, but it was a question for the court whether it
should not leave the price to be determined by the discretion
of the receiver.

In the very case of Vanderbilt v. Central Railroad Co.,
43 N. J. Eq. 669, so strongly relied upon by appellants, it was
remarked in the opinion of the court, p. 684:

"It must have been contemplated that in the performance
of those multifarious duties some degree of discretion might
be, accorded to the receiver. Whether a power to exercise
such discretion would not be assumed to exist in every case
without a special order need not be considered, for it is clear
that the chancellor may accord such discretionary power to a
receiver by a general order — such as was made in this
cause. . . .

"If the contract has been completely performed and its per-
formance accepted by the receiver, and the claim is merely
for compensation, relief of that nature would seem necessarily

to be awarded, unless the applicant should appear to have dealt fraudulently or collusively with the receiver to the detriment of the trust. Even if, in the judgment of the chancellor, the contract was improvident and unreasonable, unless the contractor should appear to have contracted with notice of the improper character of the contract, no just reason could be given for debarring him from the agreed-on compensation which the receiver might, for his negligence or misconduct, be required to repay to the fund."

The work done having thus received the sanction and approval of the court, it can make no difference, so far as the legal aspect of the case is concerned, whether the contract was executed by one or both of the receivers. Indeed, in view of the fact that two or more receivers of a railway are frequently appointed who sometimes reside at considerable distances from each other, we are unwilling to say that a contract may not lawfully be made by one of such receivers, which shall be binding upon the estate. The necessities of the case may sometimes require that contracts of a local character shall be made, where it is inconvenient, or perhaps impossible, to obtain the consent of the other receiver. So, if by arrangement between themselves one is constituted managing receiver, his authority may have a broader scope and may approximate to that of a sole receiver. Mr. Chadick may have made an injudicious bargain in agreeing to pay $10,250 for the job, but so long as no bad faith is imputed to him and no fraud or mistake is charged, it is difficult to see how the company can escape payment. The contract having been fully performed, evidence of the actual value of the work and materials was irrelevant, and in this view of the case the master did not err in ruling it out and holding the receivers to the contract. "The true value of the work done and materials furnished" may be, with entire appropriateness, said to be the value which the parties have deliberately and knowingly put upon them, and "the amount justly and equitably due" the contractor under such circumstances is the amount which the receiver has promised to pay him. In addition to this, there was extra work per-

formed by Cooper & Son, the amount of which was to be determined upon the principles of *quantum meruit*, as to which work this language was especially applicable.

The fact that the court did not direct the computation to be made irrespective of the contract, and that it subsequently recognized the validity of the claim and directed it to be paid, is inconsistent with the idea that it did not intend that the contract should be respected. If Mr. Gowen, who appears to represent more particularly the interests of the bondholders and knew the work was being done, had desired to know the terms upon which Cooper & Son were doing the work, he might easily have informed himself, as he had done before, and called the attention of the court to the matter, when it may be assumed the court would have protected his rights. His testimony that he did not suppose the work was being done under contract is somewhat inconsistent with his stoppage order of June 3, which plainly contemplated a contract for future work.

There was no error in the court ordering the bill of Cooper & Son to be paid as a preferred claim. The work had been commenced before the receivership and was done in good faith, for the benefit of the company and the receivers. The building must either have been finished or the work already done become a total loss to the company. It appears to have been constructed for the accommodation of the officers of the road, and in other respects in furtherance of the interests of the road, and is an asset in the hands of the receivers, which may be sold, and the money realized therefrom applied to the payment of the claim. The fact that it is not covered by the mortgage renders it the more equitable that the proceeds of this sale shall be applied to the payment of the cost of its construction.

The decree of the court below is, therefore,

*Affirmed.*