**STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,**

v.

**Jack J. FERGUSON, Respondent.**

**S. C. B. D. No. 1745.**

Supreme Court of Oklahoma.

Nov. 1, 1960.

Hess Crossland, Tulsa, for complainant.

Jack J. Ferguson, Tulsa, pro se.

W. E. Green, Tulsa, for respondent.

WILLIAMS, Vice Chief Justice.

The Central Committee of the Oklahoma Bar Association has recommended that Jack J. Ferguson from Tulsa, hereinafter referred to as "Respondent", be suspended from the practice of law as a member of the Oklahoma Bar for a period of six months.

An insurance company appears to have brought an action against one Clark for about $1,100. Respondent was retained to defend that action, although it further appears that said Clark had practically no defense to it. In hearing before Grievance Committee 14–A, Respondent admitted that on August 6, 1956, he, Respondent, accepted $650 in cash from his client, with the hope that he could settle the insurance company claim against his client for $550 and with the understanding with his client that if he did so he could retain the other $100 as a fee.

Along about the time Respondent received Mr. Clark's money, Respondent was having marital difficulty. Apparently he became inebriated and spent or lost his client's funds.

Mr. Clark took the matter up with the County Attorney who conferred with Respondent. The matter was referred successively to the Oklahoma Bar Association and by it in turn to the above named committee. The latter committee notified Respondent to appear in answer to a writ-

ten complaint lodged with it charging him with misconduct as above outlined.

The Grievance Committee, in reporting its findings of fact, said:

"In his opening statement, the respondent admitted all of the allegations of the complaint except that he denied a willful appropriation of his client's funds, stating at the same time he admits that such is reasonable inference from the fact that he did not apply the funds to the purpose for which such funds were delivered to him.

"In substance, respondent pleads guilty to the charge."

On the date Respondent had received the $650 he wrote the attorneys for the insurance company offering to settle the case for $550. Respondent testified that in the light of his experience in such cases, he believed the matter could be settled for that amount.

When his client's case was set for trial, Respondent did not notify him of such setting. Mr. Clark learned of the existence of the judgment against him from some other source. Subsequently, and on June 14, 1957, Respondent procured a release and satisfaction of judgment in the case against his client by paying the sum of $650 and court costs in the amount of approximately $18. ·

The Grievance Committee further reported as follows:

"In explanation of his statement that he did not willfully appropriate the money, respondent states that he simply does not know what happened to it. At the time he was separated from his wife, under severe emotional stress, and was drinking heavily.

"Within a few days the money was gone. He states that he may have spent, gambled, lost, or been rolled for the money, but he simply does not know what happened to it.

"Respondent's explanation of his conduct was to the effect that he was hoping against hope that money would become available to him with which to effect the settlement, and that even after the judgment was entered he continued to hope that he would earn or otherwise find the funds with which he could dispose of the case without having to reveal the situation to his client, but that all such hopes proved futile."

The recommendation of the Grievance Committee was in part as follows:

"The committee has considered, and such have weighed heavily, the fact that restitution has been made, that respondent's client appeared and informed the committee that he bore respondent no ill will and did not desire to press the matter further, that no other instance of improper conduct of this or any other character on the part of respondent was brought to the attention of the committee, and that the respondent appeared willingly, made a clean breast of the entire matter freely answering all of the questions propounded, many of which he could have refused to answer under the rules.

"The explanation offered, in view of the age and experience of respondent, is understandable, but, in view of the high standard of the profession, not excusable, and if our standards are to be maintained, such violations cannot be permitted to pass unnoticed, merely because the respondent is repentant, and because the injured client does not desire to press the matter after having received restitution."

Such report was submitted to and was considered by the Central Committee of the Oklahoma Bar Association, which Committee formally approved and adopted the report January 9, 1959. In its report to this Court said Committee recommended:

. "That on account of unprofessional conduct of the respondent described and set forth in the Complaint and thereafter admitted by respondent, the license of respondent Jack J. Ferguson, to practice law as a member of the Bar

of the State of Oklahoma be suspended for a period of six (6) months and that the period of suspension begin from the date this Court makes its final Order herein."

Respondent admits the facts set out in the quoted findings of the Grievance Committee, but argues that plaintiff was not properly represented at the hearing before said Committee. Plaintiff contends that had he been properly represented, proof would have been made that respondent's professional conduct prior to the incidents referred to in the report was good; that the testimony of numerous members of the bench and bar would have been presented to the effect:

"that this is the only instance known by them, or any of them, where he has been guilty of any infidelity to his profession, and that they would attest to the fact that he has suffered untold retribution for this one error, and that it will never happen again, and that he will live strictly up to his oath of his office as a lawyer and will lead an exemplary life as a member of the Bar."

Respondent urges that in any event the recommendation submitted to this Court be rejected as too harsh and that respondent be only reprimanded.

The question presented to us is whether Respondent's conduct as above set out justifies disciplinary action and the extent thereof, if any.

In Oklahoma, an attorney, upon his admission to the Bar, takes an oath that he will act in the office of attorney in this court according to his best learning and discretion with all good fidelity as well to the court as to his client. 5 O.S.1951 § 2.

It is further provided by statute:

"Disciplinary power and revocation of permit—The Supreme Court of the State of Oklahoma shall have the exclusive power and authority to discipline attorneys and counselors at law or revoke the permit to practice law granted to attorneys and counsellors at law

and the rules of conduct of attorneys and counselors at law in this State shall be such as are now or may hereafter be prescribed by the statutes of Oklahoma and the rules of the Supreme Court." 5 O.S.1951 § 13.

By Article 10 of Rules Creating, Controlling and Regulating the Oklahoma Bar Association (promulgated pursuant to such statutory authority, see Chapter 1, Appendix to Title 5 O.S.1951) it is provided:

"The Court adopts the canons of ethics of the American Bar Association as the standard of professional conduct of attorneys at law, and all members of the Oklahoma Bar Association shall be governed thereby, and any attorney violating any of such canons shall be subject to discipline or disbarment, as herein provided."

In turn, it is provided in part by Canon 11 of the Canons of Professional Ethics of the American Bar Association as follows:

"11. Dealing With Trust Property.

\* \* \* \* \* \*

"Money of the client or collected for the client or other trust property coming into the possession of the lawyer should be reported and accounted for promptly, and should not under any circumstances be commingled with his own or be used by him."

From a careful examination of the transcript of the hearing of the Respondent's case before the Grievance Committee and the report of such committee, which in turn was approved in a report to us by the Central Committee of the Oklahoma Bar Association, we conclude that Respondent's handling of Mr. Clark's money was not in full compliance with his professional obligation.

However, from all the evidence adduced in the hearing, it was not shown that Respondent intentionally used or disposed of Mr. Clark's funds.

We also note that Respondent during the intervening months was heavily convicted

by his own conscience of guilt of impropriety; that, while living apart from his own family and with his parents, he confessed to having lost the money and being worried about it.

He was man enough that he did not call upon his parents for assistance, rather hoping against hope to be the beneficiary of some situation whereby an ample fee would be afforded him with which to relieve Mr. Clark from the effect of the default judgment theretofore permitted to have been taken against him.

In In re Sitton (State Bar Committee ex rel. Bridges v. Sitton), 72 Okl. 13, 177 P. 555, this Court said:

"The lawyer's life must be one of fidelity and stern integrity. There is no place at the bar for the unscrupulous, and the cheeks of the lawyer, who besmirches his profession, should be made to burn with shame; but disbarment means professional excommunication and death, and should be resorted to only when it is apparent that the interest of the community, the integrity of the courts, or the honor of the profession, imperatively demands it."

In the same year, this Court had before it for consideration the case of: In re Reily, 75 Okl. 192, 183 P. 728, 729, 7 A.L.R. 89, and in that instance the Court said:

"The law does not demand that every technical infraction of the law by an attorney shall require his disbarment, although an attorney should endeavor to observe literally the law, but it is those infractions of duty that involve moral turpitude and evince a depraved character that render such attorney untrustworthy and a reflection upon the bar and the court, as an officer thereof, that demand his disbarment."

This young man had no previous record or even hint or breath of trouble or scandal against his name. Were we to conceive among our duties that of punishing him, we would be forced to the acknowledgment and consideration, in mitigation, of the measure of punishment he has suffered in the form of the beating given him by his own conscience, the snide remarks of his fellows at the Bar (of record in this case), his having to appear and confront the Committee members and the witnesses against him at the private hearing before the Grievance Committee and his having his case put of record in this court for all the world to read.

However, we believe our principal duty in the premises to be that of assisting the young man concerned in rehabilitating himself as a lawyer at this Bar.

The unprofessional conduct of Respondent in the instant case is established by clear and convincing evidence.

The respondent is a comparatively young man, having practiced law about eleven years. He cooperated at the hearing before the Grievance Committee by giving his evidence freely even though as to some of it he probably would have been protected under the rules of this court from doing so on the ground of not being required to incriminate himself or jeopardize his standing in the profession. He admitted that his conduct was not proper. As noted in the respects referred to hereinabove, the recommendation was for suspension for six months. After full consideration of the extenuating and mitigating circumstances, herein related, we feel that the imposition of such a penalty would be too severe as a purely disciplinary measure.

In the case of In re Myres, 172 Okl. 123, 43 P.2d 773, 774, we said:

"The authorities of the State Bar evidently concluded that this respondent was a man of promise, and that a suspension from the practice of law for a definite period of time would meet the necessities of the case and more nearly serve the proper purpose. In view of the determination of other bar cases, and after careful consideration of the record here, we approve that conclusion, but it is the view of the court that the suspension * * * as

recommended may in this case be properly reduced * * *."

In the case of In re Hadwiger et al., 167 Okl. 307, 27 P.2d 604, 605, quoting from People ex rel. Chicago Bar Ass'n v. Lotterman et al., 353 Ill. 399, 187 N.E. 424, we said:

"It is the duty of the court to protect the public against the wrongful acts of unscrupulous and dishonest attorneys. However, the court also owes a duty to attorneys who, though they have made a mistake in their professional conduct, have not done so through any base, sordid, or dishonest motives."

We think a reduction in the period of suspension to ninety days better accords with even justice in this case. The respondent's license to practice law as a member of the Oklahoma Bar is therefore hereby suspended for a period of ninety days beginning with the date that this opinion becomes final.

WELCH, HALLEY, JOHNSON and BLACKBIRD, JJ., concur.

DAVISON, C. J., and JACKSON, IRWIN and BERRY, JJ., concur in part and dissent in part.

JACKSON, Justice (concurring in part and dissenting in part).

I am in full agreement with the findings and recommendations of the Central Committee of the Oklahoma Bar Association that the Respondent, Jack J. Ferguson, is guilty of unprofessional conduct as charged, and that he should be suspended from the practice of law as a member of the Bar of the State of Oklahoma for a period of six months from the date our order becomes final. I therefore dissent to that portion of the majority opinion which limits the suspension to a period of ninety days.

I am authorized to say that DAVISON, C. J., and IRWIN and BERRY, JJ., concur in this view.