**STATE of Oklahoma ex rel., OKLAHOMA BAR ASSOCIATION, Complainant,**

v.

**Richard G. KEERAN, Respondent.**

**S. C. B. D. No. 2309.**

Supreme Court of Oklahoma.

April 4, 1972.

Paul M. Vassar, Gen. Counsel, Oklahoma Bas Assn., Oklahoma City, for complainant.

W. P. Huckin, Jr., Tulsa, for respondent.

BARNES, Justice:

Respondent was employed to handle the probate administration of the Richard E. Linihan Estate. At the time he was employed, there was no agreement as to how much his attorney's fee would be. The petition for probate of the will was filed and the will was admitted to probate. Respondent thereafter received certain checks from Mrs. Linihan, the Executrix, as partial payments on his total fee. The last of these checks, with the notation thereon "Bal Attys fee", was in the amount of $7,483.60. By the time the Executrix' final account came on for hearing before the Probate Judge, respondent had received a total of $18,483.60 as attorney's fees, and an additional $440.60 as reimbursement for expenses.

The gross estate, as shown in the Inventory filed by the Executrix, was $451,953.-35. A minimum fee, based on 5% of the first $10,000.00, 4% of the next $90,000.00, and 3% of the remaining $351,953.35 of the estate's inventoried value, would have been $14,658.60.

When, at the hearing on the Executrix' final account, the Probate Judge asked if there were any objections to the attorney's fee being charged against the estate, Richard E. Linihan, Jr., a son and heir of the testator, informed the court that he was "not happy" with its amount. The Probate Judge then indicated that he would recess the hearing and suggested that the parties settle their differences and attempt to agree upon the attorney fee. After the recess began, the Executrix stated that she didn't

want the closing of the estate delayed and, if dispute over the amount of the attorney's fee was going to do that, she would pay the amount charged. Respondent said there would be no delay in closing the estate, and he thereupon voluntarily agreed to adjust the fee to a figure that would be agreeable to the Executrix and her son. The amount agreed upon for the total attorney's fee was $14,000.00, to which $994.26 was added for expenses, making a total sum of $14,994.26 that was allowed by the court. At that time, respondent did not have funds to refund the excess over that amount he had received from Mrs. Linihan. There was no date set for him to make the refund, but he agreed to pay it "as soon as I can get it."

Respondent never made the refund, and Mrs. Linihan employed a Tulsa attorney to collect it by civil suit. Said suit is now pending in the District Court of Tulsa County.

Respondent has never been in direct contact with the Linihans since the above described hearing. In April, 1960, he was advised by their present attorney that he represented them, and, as such, the attorney requested respondent to remit the sum he had agreed to refund. Thereafter, four letters and a large number of telephone calls were initiated to respondent by this attorney in an attempt to collect the debt. Many of these calls were not completed because respondent was not available.

On August 15, 1970, respondent advised the Linihans' attorney that a cashier's check in the amount of $5,000.00, representing the refund, together, with payment on a separate note owed Mrs. Linihan, would be forwarded to said attorney. Such a check was never received. Later, telephone calls to respondent produced the representation that the check had been mislaid, and later that a teller had embezzled the check. Respondent admitted in this disciplinary proceeding that there never was such a check, and that all of his statements to the Linihans' attorney concerning it were falsehoods.

On various dates respondent was contacted by certified mail advising him that a Bar disciplinary complaint had been filed against him and requesting a response. No such response was forthcoming.

As far as the record of this proceeding shows, no application was ever made to the court in the Linihan probate proceedings, nor was any court order ever obtained, for payment to respondent of partial attorney's fees, or any attorney's fees, prior to the filing in said proceedings of the Executrix' final account and the order approving said account and allowing attorney's fees. In other words, respondent prepared checks for payment to himself of partial attorney's fees without application to, or order from, said court. He then presented those checks to the Executrix for her signature. This case demonstrates the hazards of such a practice, especially where more attorney's fees have been paid than were finally authorized by court order. If applications for them had been made to the court and orders granting the applications obtained for each partial payment, it is likely that the court never would have permitted the prepayments to amount to as large a total as the fee set forth in the Oklahoma Bar Association's minimum fee schedule, and surely would not have allowed partial payments totaling more than that minimum. In the agreement respondent made with Mrs. Linihan and her son at the aforementioned court recess, respondent, in effect, acknowledged that he had received money of his client that did not belong to him. Under Canon 11 of the Canons of Professional Ethics, a client's money in the possession of a lawyer "should not under any circumstances be commingled with his own or be used by him."

As to the aforementioned admitted misrepresentations respondent made to the Linihans' present attorney about his arrangements to repay this money, the Trial Authority found they were falsely made and concluded that they deliberately misled the attorney, and that "Respondent has been guilty of conduct contrary to honesty

and the high standards of professional conduct."

In State ex rel. Oklahoma Bar Assoc. v. Pate, Okl., 441 P.2d 393, 397, this Court said that Pate's "untrue statement goes far afield of the honesty, justice and good morals required of a member of the bar." And we there recognized that dishonesty in dealing with a fellow man, even if that man is not a client, may justify disciplinary action. We also there expressed the opinion that in making the untrue statement, Pate had violated the Canons of Professional Ethics and his oath as an attorney, after we quoted State ex rel. Oklahoma Bar Assoc. v. Ablah, Okl., 348 P.2d 172, concerning the high standards of professional conduct required of a lawyer under those Canons, and holding that for conduct "that will bring the legal profession into disrepute" a lawyer may be reprimanded, suspended, or disbarred, depending upon the seriousness of the offense.

In our opinion, there is no question but that respondent has been guilty of unprofessional conduct, for which the Trial Authority has recommended his suspension, based upon a contingency, as one alternative. If, where an attorney violates Canon 11, supra, by withholding and using money belonging to his client, his subsequent reimbursement of the money after notification of the client's complaint to the Bar authorities, does not serve in extenuation of the violation (see State ex rel. Oklahoma Bar Association v. Hatcher, Okl., 452 P.2d 150, 154), then reimbursement after his trial on the complaint should not have that effect.

We are of the opinion that respondent's conduct justifies his suspension from the practice of law in the State of Oklahoma for a period of twelve months. It is so ordered.

BERRY, C. J., DAVISON, V. C. J., and WILLIAMS, JACKSON, IRWIN, LAVENDER and McINERNEY, JJ., concur.