**STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,**

v.

**H. Lee SMITH, Respondent.**

**SCBD No. 2342.**

Supreme Court of Oklahoma.

May 22, 1973.

Paul M. Vassar, Gen. Counsel, Oklahoma City, for complainant.

Ed Parks, Tucker, Boyd & Parks, Tulsa, for respondent.

BERRY, Justice:

This matter is before us for review and approval of a Report and Recommendation of trial authority appointed by this Court and under the provisions of Rules Creating and Controlling the Oklahoma Bar Association.

A complaint was filed against respondent, H. Lee Smith, by the Oklahoma Bar Association. Allegations of the complaint are that Mrs. Manning paid $350 to respondent for professional services and court costs to institute divorce proceedings against her husband. In the event her husband was ordered to pay any sum up to $350, this amount would be repaid to Mrs. Manning. Proceedings were commenced. Mr. Manning [defendant in divorce proceeding] was ordered to pay respondent $250, which was paid prior to trial. Mrs. Manning was granted a divorce. The division of property resulted in each receiving an undivided one half interest in a 3 acre tract upon which stood a building used as a garage. Mr. Manning appealed.

An agreement between Mrs. Manning and respondent provided an additional $500 fee in the event of an appeal. Mrs. Manning paid respondent $200 to apply on this additional fee. In April of the next year the building on the 3 acre tract was damaged by fire. Respondent represented Mrs. Manning in settlement with the insurance company along with Mr. Manning's attorney, R. M. Without the knowledge of Mrs. Manning, respondent and R. M. settled with the insurance company in the amount of $708.75. R. M. delivered to respondent a check in this amount made payable to Mr. and Mrs. Manning. Subsequently respondent returned this check with Mrs. Manning's signature which respondent had previously forged along with his own signature. This was carried out by respondent without knowledge, consent, authority and permission of Mrs. Manning. R. M. secured and delivered a cashier's check to respondent in the amount of $301.39 made payable to Mrs. Manning as her portion of the settlement less contribution for premium.

Later respondent forged Mrs. Manning's signature and endorsed his own, presented the check and received payment of $301.39. All this was done without knowledge, con-

sent, authority or permission of Mrs. Manning. He then appropriated the use and purpose of the money contrary to the trust due Mrs. Manning and in violation of his oath of attorney.

To this complaint respondent filed a response in the form of a five page hand written letter to the General Counsel of the Bar Association. The response itemized all moneys received by respondent in connection with his representation of Mrs. Manning. Included in this list is the following:

"I now hold $301.39 against her indebtedness to me of $300.00 on agreed fee of appeal."

The response generally denied any wrongdoing on respondent's part. He set out a resume of the quantity and quality of the work performed and the reasonableness of his fee. He admitted endorsing Mrs. Manning's signature to checks, but did so with her consent and approval. She had told him to do so as his fee to be applied on an appeal in her divorce proceedings. He deposited the proceeds [$301.39] of Mrs. Manning's insurance settlement to his "client trust account."

After respondent learned from attorney R. M. for Mr. Manning that the divorce appeal was being dismissed, Mrs. Manning called respondent and asked for a return of the $500 she had paid him to handle the appeal. Respondent refused. Later Mrs. Manning demanded $750; then she asked for all she had paid him or $1,100.00. She told him that she would ruin him. Respondent told her that he was holding $301.39 until she paid him.

The matter came on for hearing before the trial authority.

Cannon 11 of the Canons of Professional Ethics as amended 1966, then in force and effect [now included in the Code of Professional Responsibility Canon 9] provides:

"*Dealing with trust property.* The lawyer should refrain from any action whereby for his personal benefit or gain he abuses or takes advantage of the confidence reposed in him by his client.

"Money of the client or collected for the client or other trust property coming into the possession of the lawyer should be reported and accounted for promptly, and should not under any circumstances be commingled with his own or be used by him. As amended Aug. 31, 1933; Sept. 30, 1937."

After the conclusion of the hearing trial authority entered a detailed statement of facts, findings thereon, and conclusions of law supported with precedents. The trial authority found that respondent accepted settlement from an insurance company due Mrs. Manning and endorsed Mrs. Manning's name to the draft without her permission or authority. Trial authority also found that Smith endorsed Mrs. Manning's name to a cashier's check, which was her one half of a fire loss settlement, and diverted these funds without her knowledge, authority or approval.

Complainant's evidence clashed sharply with respondent's on two points. The first being the initial payment of $350 by Mrs. Manning to respondent. Mrs. Manning testified the agreement was that respondent would return all sums paid by Mr. Manning ordered by the court to repay Mrs. Manning's advanced fee. Respondent denied this and testified this was merely a temporary fee not to be repaid and that he was to receive all moneys ordered by the court to be paid by Mr. Manning for legal fees on her behalf. The trial authority made no finding in regard to this point.

The second contradicted point was the endorsement by respondent of the name of Mrs. Manning on two checks. One check from the insurance company payable to Mr. & Mrs. Manning was for settlement of fire damage to jointly acquired property and one endorsement on a cashier's check [$301.39] was for Mrs. Manning's portion of the settlement. Respondent's evidence was that he signed Mrs. Manning's name with her knowledge, consent and approval. She owed him an additional $300 for his legal fee to represent her on the appeal, and she orally instructed him to cash the check and apply the proceeds on the bal-

ance due him. He testified that he put this money in a "client trust account."

Without an extended summary of the evidentiary proceedings certain evidence is unrefuted. An officer of the bank who cashed the cashier's check made payable to Mrs. Manning in the amount of $301.39, testified to the following: Respondent presented the check with Mrs. Manning's name already signed and endorsed his signature in the officer's presence. With proceeds he purchased 4 cashier's checks in the following amounts: $60, $12, $15 and $13 with the bank charges of 60¢. Each check was made payable to a different person who are otherwise not connected with this case. He took $25.79 in cash. Respondent then deposited $175 in a checking account in that bank called "H. Lee Smith, Client-Trust Account." [It is to be noted as of the date of deposit this trust account did not exceed $175 and within seven weeks the account was depleted to less than $30.]

An examination of the record discloses Mrs. Manning's name as it appears as an endorsement on the cashier's check bears a close resemblance to Mrs. Manning's genuine signature. As Mrs. Manning's testimony shows her purported endorsement is strikingly similar to her genuine signature and not at all similar to respondent's signature. Respondent refused to explain the similarity of his endorsement of Mrs. Manning's name to Mrs. Manning's genuine signature.

During respondent's cross-examination it is shown that he considered the $301.39 as his money even though he put it in his client-trust account. His reason was that he was personally involved in a divorce proceeding and this was the only place he could keep it. In this respect respondent contradicts his prior assertions that he was holding $301.39 until Mrs. Manning paid him the $300. The record is abundantly clear that respondent never at any time held the $301.39 for Mrs. Manning.

Mrs. Manning testified as to great effort she put forth in order to determine what happened to the proceeds of the insurance settlement. During this search Mrs. Manning was unable to find out from respondent. Respondent refused to talk to her until she obtained another lawyer. Respondent then told her that he was holding the money for her.

The record supports the trial authority's findings that respondent accepted a settlement on behalf of his client, endorsed her name to a settlement draft without his client's consent, authority or approval, and endorsed her name to a cashier's check representing her half of the insurance settlement, without her consent and approval and did convert, or misappropriate these funds in the amount of $301.39 to his own use and benefit, and that respondent is guilty of acts in violation of the Canons of Professional Ethics and the Rules and Regulations of the Oklahoma Bar Association.

The trial authority recommended suspension of respondent from the practice of law for six months.

Respondent filed exceptions to the trial authority's report. These exceptions were to specific findings of fact, and they are not considered to be material in this review.

The report of the trial authority along with the proceedings were filed with the Chief Justice of this Court. Complainant filed a "Motion To Increase Discipline" from six months suspension to disbarrment. Respondent filed a "response to Complainant's Motion To Increase Discipline."

Respondent in response requests this Court to consider that Mrs. Manning caused criminal charges to be filed against him and he was placed in jail. After which he settled the criminal matter by the payment of a sum which was more than he had received in his representation. He has been unable to practice law due to the criminal matter except for small uncontroverted matters for a few friends. Also subsequent to the Bar proceedings, Mrs. Manning did not wish to see him disbarred.

We have examined the record and are convinced and so find as did the trial au-

thority that without the knowledge, authority or consent of Mrs. Manning respondent did settle and receive the benefit of a claim due Mrs. Manning for a fire insurance loss, and further signed her signature both to the check issued to her and Mr. Manning, then without the knowledge, authority or consent of Mrs. Manning proceeded to cash this check and from the proceeds have issued a cashier's check payable to Mrs. Manning, after which he converted the proceeds for his own use and benefit and in violation of the Code of Professional Ethics [presently the Code of Professional Responsibility].

However, insofar as the recommendation by the trial authority pertaining to discipline we approve as modified. We find that respondent should be and is hereby ordered suspended from the practice of law for a period of two years from the finality of this order.

Recommendation of the trial authority is approved as to findings of fact, and approved as modified as to discipline.

All Justices concur.