Brian Mitchell **CHAMBERS**, Appellant,

v.

**STATE of Oklahoma, Appellee.**

No. F–84–322.

Court of Criminal Appeals of Oklahoma.

Aug. 28, 1986.

John Echols, Echols & Echols, Inc., Tulsa, for appellant.

Michael C. Turpen, Atty. Gen., Robert W. Cole, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BRETT, Judge:

The appellant, Brian Mitchell Chambers, was charged in the District Court of Pawnee County, Case No. CRF–82–12, with First Degree Murder. The jury found him guilty of the lesser included offense of First Degree Manslaughter but could not agree on the punishment. The trial judge set the sentence at thirty (30) years' imprisonment. On appeal, we affirm the judgment and sentence. Oral argument was requested by defense counsel, but we do not find it necessary for the determination of the issues raised.

Eighteen-year-old Brian Mitchell Chambers killed his mother. A high school student, the appellant asked his mother on April 3, 1982, if he could attend a dance being sponsored by the student council that night even though he was grounded. She began screaming and hit him. The appellant, who had a hammer in his hand at the time because he was doing some work, struck his mother with the hammer fourteen times, then procured a steak knife from another room and stabbed her twelve times. The mother died. The knife wounds, three of which penetrated the heart and the aorta, were sufficient to cause death and were inflicted before death occurred. The decedent also could have bled to death as a result of all the injuries.

■ In his first assignment of error the appellant alleges that the "trial court should not have permitted the State to present evidence at trial in support of a factual theory of the case which had been flatly rejected by the Preliminary Hearing Magistrate." The information alleged in part that the appellant effected the death of Sondra Curtis Taylor with malice aforethought by use of a hammer and knife with blows to the head and stab wounds to the chest area. When the Associate District Judge who sat as Magistrate delivered his decision to bind appellant over for trial on the charge of First Degree Murder, he commented that apparently the blows inflicted by the hammer were not calculated

to cause death. It is clear from reading his decision that the Magistrate was not making a legal finding that there was insufficient evidence to bind the appellant over on the information or that the information should be amended; he was merely stating his personal opinion. Accordingly, it was not error to overrule appellant's subsequent demurrer.

■ The next allegation of error is that the trial court should have ordered a new trial when it was discovered that the rules governing the safekeeping of the jury ballots had been broken. A ballot with the name of a person on it who was ñot summoned for jury duty was found in the box during voir dire. Upon inquiry it was discovered that sometime after the jury was impaneled the ballots were allowed out of the custody of the court clerk. Although the rules governing jury selection were not strictly adhered to, we do not find that the appellant was deprived of a substantial right or suffered material prejudice, which is a prerequisite to a challenge of the jury panel. *See* 38 O.S.1981, § 29 and 22 O.S. 1981, § 633. The person whose name appeared on the stray ballot was not present, and the primary purpose of the statutes— to insure that jurors are drawn fairly and impartially rather than secretly hand-picked—was accomplished. *See Owens v. State,* 665 P.2d 832 (Okl.Cr.1983).

■ During voir dire two veniremen indicated they believed that the State and the defendant shared the burden of proving the facts of the case. Defense counsel's challenge for cause was overruled. We agree with appellant's contention that this was error.

One of the men in question had earlier stated that he would view the appellant's failure to testify as an indication of his guilt. The trial court asked whether he would follow the court's instruction if the court instructed that the appellant's failure to testify could not be held against him in the slightest degree. The juror responded that he could. On the issue of burden of proof, however, the trial court did not ask whether the jurors could follow his instruc-

tion if he told them that the burden of proof was on the State alone. Thus, the two jurors were not rehabilitated. As the record stands, the trial court erred in refusing to dismiss the jurors for cause.

Nevertheless, both men were removed by peremptory challenges, and although all peremptory challenges were used, the appellant does not allege that any juror who sat on the trial was objectionable. Thus, there is no ground for reversal. *See Ross v. State,* 717 P.2d 117 (Okl.Cr.1986); *Bewley v. State,* 695 P.2d 1357 (Okl.Cr.1985).

■ The fourth assignment of error concerns evidence of other crimes, but about what appellant specifically is complaining is unclear. Apparently the reason the appellant had been grounded was that he had used his mother's bank card to withdraw money from her checking and saving accounts without her permission. Using someone else's bankcard without permission constitutes a crime. The State was limited, however, by various rules of evidence in conveying this information to the jury.

A bank employee testified that the victim had reported that she had not made certain withdrawals. He did not testify that the withdrawals were in fact unauthorized or that he knew who had made them. Through this witness the State introduced Exhibit 53 a list of all the questioned transactions. Appellant's own brief states,

> Under the Court's instruction, nothing in State's Exhibit # 53 even tends to show that a ... crime had occurred, much less that the Appellant had committed the supposed crime. The non-hearsay testimony of [the bank employee] does nothing to provide evidence tending to either establish that a crime had been committed by anyone, or tending to link the Appellant to the alleged criminal conduct.

. . . .

The attentive reader can search the record in vain for any other evidence of any kind on the issue of whether or not

the reports of unauthorized use made by the deceased were true in fact. One can also search in vain for any evidence tending to show that the Appellant had been the person who had supposedly committed the alleged ... crime.

The reason that evidence of other crimes is generally prohibited is that when one is put on trial, he is to be convicted—if at all—by evidence that shows he is guilty of the offense charged, and evidence of other crimes he may have committed is not admissible to prove the character of the accused in order to show that he acted in conformity therewith. *Burks v. State,* 594 P.2d 771 (Okl.Cr.1979); 12 O.S.1981, § 2404(B). If there is no evidence linking the unauthorized withdrawals to the appellant, the evidence does not fall under this general rule. Under these circumstances the evidence was inadmissible, not because it showed the appellant had committed another crime, but because without linking the crime to the appellant the evidence was irrelevant.

Unfortunately, the prosecutor was allowed in closing argument to act as though a link to the appellant had been demonstrated. He stated that the appellant was grounded for taking money from his mother. As this was not a fair comment on or inference drawn from the evidence introduced during the trial, it should not have been said. Nevertheless these errors do not merit reversal as they were slight compared to the weight of the evidence. *See Mahorney v. State,* 664 P.2d 1042 (Okl.Cr. 1983).

■ Appellant's next assignment of error is patently frivolous. He alleges that his confession should have been suppressed because the police did not tape-record it. No authority is cited for this proposition as there is none, and we decline to fashion a rule requiring that all interrogations be tape-recorded. As a corollary to this assignment or error, the appellant feels he was and is entitled to examine the field notes made at the time. He is not. *See Wilhite v. State,* 701 P.2d 774 (Okl.Cr. 1985).

■ The sixth assignment of error alleges that the instructions given to the jury erroneously shifted the burden of proof with regard to self-defense and the lesser included offense of manslaughter. More specifically, appellant alleges that the trial court should have instructed the jury that the State had the burden of disproving his defenses, namely that the homicide was either manslaughter or committed in self-defense.

The jury found the appellant guilty of manslaughter rather than murder. Thus, whether the failure to instruct the jury that the State had to prove absence of heat of passion before the jury could find the appellant guilty of murder is irrelevant. Also irrelevant is whether the instructions ordered the jurors to consider first the allegation of murder and consider manslaughter only in the event that no unanimity was reached on the murder charge.

As for the burden in regard to self-defense, the jury was instructed that the State had the burden of proving beyond a reasonable doubt that the appellant was not acting in self-defense. They were also instructed that the State had the burden of proving beyond a reasonable doubt that the appellant was not justified in using deadly force in self-defense. The assignment of error is without merit.

In his seventh assignment of error the appellant asks this Court to review fifteen allegedly improper statements made by the prosecutor in closing arguments. We have reviewed them, and find many to be not at all objectionable. Others were remedied by the trial court. Certainly there are none that merit reversal or modification.

■ The appellant next complains that it was error to allow Boyd Peters, the district attorney's investigator, to testify after having remained in the courtroom throughout the trial. After the rule of sequestration has been invoked, whether to grant exceptions is solely within discretion of the trial court. *Edwards v. State,* 655 P.2d 1048 (Okl.Cr.1982). We do not find an abuse of discretion in this instance.

Finally, the appellant argues that the trial court erred in refusing to hear evidence regarding the nature of prison confinement and its potential to help or harm a prospective inmate. Like the trial court, we fail to see the relevancy of prison conditions in the determination of an appropriate sentence. The trial court properly ruled that the only matters relevant in the sentencing hearing were issues raised in the pre-sentence investigation report and evidence in mitigation of punishment.

Finding no error warranting reversal or modification, we affirm the judgment and sentence.

PARKS, P.J., concurs.

BUSSEY, J., concurs in results.