STATE of Oklahoma, ex rel. OKLA-
HOMA BAR ASSOCIATION,
Complainant,

v.

Danny R. BROWN, Respondent.

OBAD No. 862.
SCBD No. 3509.

Supreme Court of Oklahoma.

May 16, 1989.

John E. Douglas, Asst. Gen. Counsel, Oklahoma Bar Ass'n, Oklahoma City, for complainant.

Thomas Wisener, Lawton, for respondent.

ALMA WILSON, Justice:

Respondent lawyer was accused by Petitioner Bar Association of professional misconduct sufficient to warrant professional discipline. After a hearing before a Professional Responsibility Tribunal, the Tribunal received stipulations from the parties and made certain findings of fact. The facts reveal that the respondent was hired by Mr. Clifford Amero to represent him in a lawsuit involving a dispute over a car. This car had been purchased from Mr. Amero. During the litigation monthly installments on the purchase price of the auto were paid in to the court clerk's office of the Comanche County District Court. The respondent was successful in his defense of his client and succeeded in obtaining a judgment in the client's favor for the balance due on the auto. At the conclusion of the lawsuit, the client owed the respondent about $2,900.00, and had not paid any part of the fee.

On April 1, 1986, the respondent obtained a court minute order directing that the sum of $700.00 be paid by the court clerk from the money deposited during the litigation to the order of Mr. Amero. On that same date, the respondent received a check made payable to Cliff Amero d/b/a/ Cliff's Auto Sales and Dan Brown. Without the knowledge or approval of his client, the respondent signed or caused to be signed his client's name to the check and negotiated it. On April 9, 1986, the respondent applied to the district court for distribution of the $230.00 remaining in the court fund. The court entered an order directing the court clerk to distribute the remaining funds to the respondent, and on April 15, 1986, the court clerk gave the respondent a check payable to him in that amount.

The Tribunal found that the respondent "was not forthright" with Mr. Amero concerning the disposition of the funds. The stipulations of fact reveal that Amero was given various excuses by the respondent concerning why he was not yet able to draw the money out of the court fund. Those stipulations further reveal that on May 4, 1987, Mr. Amero went to the court clerk's office and from there was directed to the county treasurer's office where he learned that his signature had been endorsed without his knowledge on the back of the $700.00 check and that the balance of $230.00 had been issued to the respondent.

After a grievance was filed with the Oklahoma Bar Association, the General Counsel forwarded the grievance and a letter informing the respondent of his obligation to respond to the grievance under Rule 5.2 of the Rules Governing Disciplinary Proceedings. The respondent denied the allegation concerning the unauthorized signature. Later, in a deposition, the respondent testified under oath that he took the check back to his office, that Mr. Amero came to his office and endorsed the check. The Tribunal found that the respondent was not truthful with the Oklahoma Bar Association in the initial stages of the investigation of this matter. The parties have agreed that the conduct of the respondent violates DR 1–102(A)(4), (5), and (6) and DR 9–102 of the Code of Professional Responsibility, and Rule 5.2 of the Rules Governing Disciplinary Proceedings.

The Tribunal found that the respondent gave his client credit on his account for payment of the amounts received on the attorney fee, and that he reported such amounts for income tax purposes. Counsel for the complainant advised the panel that he had reviewed the respondent's file concerning the litigation and that respondent had done a good job in representing his client in connection with the litigation. In their conclusions and recommendations, the Tribunal concluded that the respondent's conduct was unethical and a violation of the rules to which the parties stipulated. The Tribunal observed that the respondent had a statutory lien on the proceeds of the litigation to secure his fee and that if the respondent and his client had not agreed upon the distribution of the funds, that in all probability the same would have been disbursed to the respondent in satisfaction of the lien. The respondent was found to have practiced law fifteen years with no other discipline.

The Tribunal unanimously recommended that the respondent be suspended from the practice of law for a period of six months and required to pay the cost of the proceedings. The Bar Association opposes the recommendation and urges a suspension for a period of two years or more in order that the respondent be required to redemonstrate his fitness to practice law as provided in the Rules Governing Disciplinary Proceedings, Rule 11. The respondent urges that this Court accept the recommendations of the Tribunal.

As support for the recommendation of the Bar Association, their brief cites four cases where funds were converted by attorneys for their own use. Those cases are *State ex rel. Oklahoma Bar Ass'n v. Lowe*, 640 P.2d 1361 (Okla.1982); *State ex rel. Oklahoma Bar Ass'n v. Bishop*, 556 P.2d 1276 (Okla.1976); *State ex rel. Oklahoma Bar Ass'n v. Smith*, 510 P.2d 936 (Okla.1973); and *State ex rel. Oklahoma Bar Ass'n v. Keeran*, 495 P.2d 399 (Okla. 1972). The attorneys in those four cases received two years' suspension, disbarment, two years' suspension, and twelve months' suspension, respectively. However, all four cases can be distinguished by the fact that the funds the attorneys took were in excess of the fees to which they were entitled and there were no mitigating circumstances.

The fact that the client owes a fee to his attorney is no excuse for the attorney to appropriate to his own use the client's funds. Rule 1.4(b) of the Rules Governing Disciplinary Proceedings provides:

> Where money or other property has been entrusted to any attorney for a specific purpose, he must apply it to that purpose. He may not avail himself of a counterclaim or set off for fees against any money or other property of his client coming into his hands for such specific purpose, and a refusal to account for and deliver over such money or property upon demand shall be deemed a conversion. This does not apply to the retention of money or other property otherwise coming into the hands of a lawyer and upon which the lawyer has a valid lien for his services. [5 O.S.1981, ch. 1, App. 1–A.]

The Tribunal found that the respondent had a statutory lien on the proceeds of the litigation and therefore the appropriation of the money to the respondent's use will not be deemed a conversion. The respondent's failures were his dishonesty in falsely endorsing a check; failing to promptly notify his client of the receipt of his funds; affirmatively misleading his client concerning the distribution of the funds; and lying under oath during the deposition. Cases involving misappropriation of client funds under the facts of the case at bar are not on point.

The recent case of *State ex rel. Oklahoma Bar Ass'n v. Stubblefield*, 766 P.2d 979 (Okla.1988) is more to the point in that one of the counts involved dishonesty, but was mitigated by the good character and reputation of that respondent. This Court found that a minimum of one year suspension was appropriate, but due to the mitigating circumstances, reduced the suspension to thirty days. In the case at bar, the Tribunal found that the respondent has practiced law for fifteen years and has had no other disciplinary actions against him.

We find suspension for six months, as recommended by the Tribunal, to be the appropriate disciplinary action. Accordingly, the respondent is suspended from the practice of law for a period of six months. The costs of the proceedings in the discipline in the amount of $1,196.88 shall be borne by the respondent. They are to be paid immediately after this opinion becomes final.

HARGRAVE, C.J., and HODGES, DOOLIN and KAUGER, JJ., concur.

OPALA, V.C.J., and LAVENDER and SIMMS, JJ., dissent.

LAVENDER, Justice, dissenting.

I must dissent from the view of the majority that a suspension for six months is appropriate disciplinary action for the conduct involved in this case. In my view the majority gives much too little attention to

the failures of the respondent in regard to what they recognize as dishonest conduct on his part. One such failure was lying *under oath* on a deposition that was given in connection with this case. Another was either fraudulently endorsing or causing to be fraudulently endorsed one of the checks involved *without the consent or knowledge of his client.* Finally, the respondent affirmatively mislead his client concerning distribution of the funds obtained by him from the court fund. Putting aside any issue concerning the proper interpretation of Rule 1.4(b) of the Rules Governing Disciplinary Proceedings in relation to retention of funds coming into the hands of a lawyer and upon which the lawyer has a valid lien for his services, the *dishonest conduct* referred to by the majority and admittedly engaged in by the respondent is reprehensible. I am particularly troubled that this respondent, in effect, committed perjury on the deposition he gave in this case. Our statutes define perjury thusly:

> Whoever, in a trial, hearing, investigation, *deposition*, certification or declaration, in which the making or subscribing of a statement is required or authorized by law, makes or subscribes a statement *under oath*, affirmation or other legally binding assertion that the statement is true, *when in fact the witness or declarant does not believe that the statement is true or knows that it is not true or intends thereby to avoid or obstruct the ascertainment of the truth, is guilty of perjury.* It shall be a defense to the charge of perjury as defined in this section that the statement is true. [21 O.S. 1981, § 491] [emphasis added]

Although the respondent finally admitted his wrongdoing in this case and, in fact, stipulated in writing to his misconduct, to suspend for six months an attorney who would perjure himself to hide previous wrongdoing is an insufficient period of time for protection of the public and preservation of the integrity of the legal profession. In essence, respondent committed a felony when he lied on his deposition by testifying that his client was contacted when respondent obtained the $700.00 check from the court fund and that the client endorsed the check at respondent's office. In truth, the client was not so contacted and the client did not endorse the check. In another case concerning perjured testimony relating to repayment of a loan from a client this Court determined that disbarment was the appropriate discipline. *State ex rel. Oklahoma Bar Association v. Zahorsky*, 569 P.2d 437 (Okla. 1977).

The Complainant has requested this Court to impose a suspension of at least two years so that respondent would have to redemonstrate his fitness to practice law after the suspension has been served. Rule 11.1 of the Rules Governing Disciplinary Proceedings, 5 O.S.1981, Ch. 1, App. 1–A, Rule 11.1, sets forth the procedure that must be followed by an attorney seeking reinstatement who has been suspended for a period longer than two years or by one who has been disbarred. It is my view that considering the misconduct involved in this case and any mitigating factors contained in the record that a minimum suspension of two years and one day is appropriate. With the imposition of such a suspension respondent would be required to reestablish his fitness to practice law before he could be reinstated. Such discipline is appropriate for one who has engaged in the misconduct committed by respondent. I, thus, dissent from that part of the majority opinion suspending respondent for a period of six months and would instead suspend him from the practice of law for at least a period of two years and one day.

I am authorized to state that OPALA, V.C.J. and SIMMS, J., join in the views herein expressed.