**STATE of Oklahoma, ex rel. OKLAHOMA BAR ASSOCIATION,
Complainant,**

v.

**William R. MOSS, Respondent.
(Two Cases)**

**SCBD Nos. 3536, 3581.**

Supreme Court of Oklahoma.

March 13, 1990.

As Corrected Aug. 2, 1990.

John E. Douglas, Asst. Gen. Counsel, Oklahoma City, for complainant.

Robert G. Green, Tulsa, for respondent.

SUMMERS, Justice.

The reports of two trial panels of the Professional Responsibility Tribunal recommended that the respondent be disciplined for lawyer misconduct. In SCBD # 3536 the trial panel recommended that Moss be suspended from the practice for twelve (12) months. In SCBD # 3581 a majority report and a minority report were filed. The majority report recommended disbarment, and the minority report recommended a public reprimand. However, before examining the merits of the disciplinary proceedings we must first address a pending motion to consolidate.

### Motion to Consolidate

Both disciplinary proceedings are now properly appealed to this Court. The Bar Association has filed a motion that they be consolidated.

In adjudicating a disciplinary proceeding this court wants the entire record of an attorney before the court. *State ex rel. Oklahoma Bar Association v. Warzyn*, 624 P.2d 1068, 1071 (Okl.1981). In *State ex rel. Oklahoma Bar Association v. Lowe*, 640 P.2d 1361 (Okl.1982), we said:

"The eventual disposition of Bar matters is often dependent on more than one episode of misconduct. The public's interest in trustworthy legal representation is best protected by a consideration of an attorney's activities over a span of time." *Id.* 640 P.2d at 1362.

We have recognized that consolidation of disciplinary proceedings promotes judicial economy. *State ex rel. Oklahoma Bar Association v. Brewer*, 794 P.2d 397 (Okl. 1989). Consolidation of the respondent's two disciplinary proceedings is in the interest of the public, conforms to prior practice of the court, and promotes judicial economy. We grant the motion to consolidate and consider proceedings SCBD # 3536 and SCBD # 3581 under the surviving SCBD # 3581.

## SCBD # 3536

■ Count I involved the respondent's actions in not placing a client's funds into a trust account, using the funds for his personal use, and not paying the funds to opposing counsel in a timely manner. Moss defended Virginia Ketchum in a contract action. The court entered a judgment against her for $958, plus costs and attorney fees. On December 30, 1986, she delivered $3,000 to Moss to satisfy the judgment, costs, attorney fees owed the plaintiff's attorney, and the respondent's attorney's fees as well. None of the $3,000 was placed into a trust account. At that time the respondent did not maintain either a trust or a law office operating account with a bank. Moss testified that the $3,000 was to be divided, with $1,851 going to opposing counsel and $1,129 to be retained by Moss as a fee. When he was asked what he did with the remainder of the money after subtracting the amount for his fees, Moss testified that: "[i]t was used to pay [my] bills". Tr. at 73. (Explanation added). Ketchum became aware that the funds had not been paid when she was informed that a lien had been placed on her property due to the unsatisfied judgment. Moss paid the plaintiff's attorney $1,500 on April 15,

1987, and then an additional $371 on May 10, 1987.

Virginia Ketchum did not know that her money remained unpaid to the plaintiff's attorney for approximately four months. The respondent's act of using his client's money for his personal expenses is sufficient to show commingling regardless of the eventual payment of those funds to the proper person. *See, State ex rel. Oklahoma Bar Association v. Lowe*, 640 P.2d 1361, 1362 (Okl.1982). His improper use of his client's money violated DR 9–102(A). *State ex rel. Oklahoma Bar Association v. Perkins*, 757 P.2d 825 (Okl.1988).

■ Count II involved the allegation that the respondent neglected a matter entrusted to him.[1] The Tribunal found an absence of clear and convincing proof of attorney neglect, and recommended no discipline on the second count. The factual question was whether Moss negligently let the statute of limitations run without filing a suit. The Bar Association did not contest the panel's finding on appeal. We have reviewed the transcript and agree with the Tribunal. Neglect to be punishable under DR 6–101(A)(3) should "involve indifference in and consistent failure to carry out the obligations which the lawyer has assumed ... or a conscious disregard for the responsibility owed to the client." *State ex rel. OBA v. Pearson*, 767 P.2d 420, 424 (Okl.1989). The Bar Association did not meet its burden of proving the charge by clear and convincing evidence (See *State ex rel. OBA v. Braswell*, 663 P.2d 1228 (Okl. 1983), and has conceded its shortcoming on appeal).

## SCBD 3581

The Bar Association filed a Complaint alleging that Moss violated DR 6–101(A)(3); DR 1–102; and Rule 1.4 of the Rules Governing Disciplinary Proceedings. The essence of the Bar's Complaint was that: 1. Moss made misrepresentations to a judge; 2. Moss did not timely file a notice of *lis pendens* prior to a sheriff's sale; and 3. Moss converted funds of a client. The first

---

1. The Complaint alleged that the respondent violated 5 O.S.1981, Ch. 1, App. 3, DR 6–101(A)(3), which states that: "A lawyer shall not: ... (3) Neglect a legal matter entrusted to him".

allegation was dismissed by the Bar at the hearing before the trial panel. *Id.* at 52.

The allegations arise from the respondent's representation of one client, Kathryn Kukar. Kukar's earlier divorce had resulted in a $4,000.00 judgment against her, which amount was impressed as a lien upon some property she owned in Creek County. In the summer of 1979 Kukar retained Moss to represent her in an attempt to negotiate a settlement of that judgment. He made some communications with the attorney for her ex-husband, but no settlement occurred. Opposing counsel commenced proceedings to execute on the property, whereupon Moss filed (1) a Request for Stay of Execution in the divorce case and (2) a new action in Tulsa County to Quash or Recall Execution Proceedings. This had the effect of causing the scheduled sheriff's sale set for March 15, 1982 to be postponed and rescheduled. Moss wrote opposing counsel that date that he intended to file a notice of *lis pendens* on the Creek County property, and further attempts to settle the judgment and lien occurred during the next five or six weeks.

On April 26, 1982, a sheriff's sale was held and the following day it was confirmed, all without notice to Moss. The buyers were Wilson and Morris. On May 5th, Respondent filed an Objection to the Confirmation, which was sustained. On the next day, May 6th, he filed a *lis pendens* notice in Creek County. On May 13th a new Order Confirming Sale was entered, and the purchasers, (the same bidders at the April 26th sale) paid the sum of $10,001.00 to the Court Clerk, under the number of the divorce case. The funds were held by the Clerk awaiting an order of the court.

Then in late July of 1982 Kukar sent Moss $10,000. This $10,000 was disbursed by Moss to her former husband and his attorney in settlement of their claims, for payment of the costs of litigation, and the respondent's attorney fees.

Then approximately one week later, due to the respondent's efforts, the trial court vacated the $4,000 judgment as void, and ruled that "all executions issued and proceedings to enforce the foregoing Judgment and lien [including the Sheriff's Sale] are void and should be recalled and quashed".[2]

The purchasers had bid $10,001 at the sheriff's sale for the real property. The order vacating the judgment and sale ordered the return of the $10,001 to the purchasers. On August 2, 1982, Moss received a voucher for $10,001 from the Clerk. On August 3, 1982, he endorsed it over to the purchasers and sent it to them. Claiming they had spent their own funds improving the property they returned the voucher and informed Moss that they were represented by counsel. Moss then sent the voucher to their attorney. The attorney returned it to Moss, and it was deposited into his trust account in September of 1982.

A quiet title proceeding was then brought by the purchasers against Kukar, who was represented by Moss. At trial the purchasers prevailed by judgment pronounced on October 17, 1984. That judgment was not appealed.

Kukar testified before the trial panel that she contacted Moss around the first of January of 1988 and requested information about the property and the $10,000. Moss testified that a few days after the adverse ruling in the quiet title proceeding in 1984 he had called Kukar and told her what had happened. He also testified that she said that she did not want to appeal and that she said: "I don't want to deal with it anymore". Tr. of 6–7–89 at 55. She filed a grievance with the Bar Association against Moss on March 30, 1988. Moss responded to the Bar's request for information and explained the disbursement of the $10,000. Later, on approximately August 16, 1988, an investigator for the Bar asked Moss about the $10,001. In a meeting with the investigator in November of 1988 Moss stated that if the $10,001 had been deposit-

**2.** One member of the trial panel thought that Moss' opposing counsel had engaged in "sharp practices."

ed into his trust account then "he had probably used that money himself, maybe unknowingly". Tr. of 4–26–89 at 104. Moss then requested Kukar's address[3] from the Bar and sent her a cashier's check for $11,000 on December 6, 1988.

Moss testified that when contacted by the investigator for the Bar he had no recollection of the $10,001 being deposited into his trust account. He testified that he thought that the $10,001 had been received by the plaintiffs' lawyer, who would have sent it to Kukar after the quiet title proceeding.

Moss testified that he first became aware in August 1988 that the $10,001 had been in his trust account. He testified that he kept no ledgers on the account but relied on the check-stub entries in the account checkbook and deposit slips, and that he simply did not know what happened to the $10,001. The evidence showed that in September of 1982 the $10,001 was deposited in the trust account, that one week thereafter the account had a balance of $9,895, and then in December of 1982 it had a balance of $2,322.66. In sum, neither the Bar or Moss could say exactly what happened to the $10,001. The trust account was closed in 1985 with a zero balance.

Two members of the trial panel found that the allegation of neglect based on the respondent's filing of the *lis pendens* notice did not merit disciplinary action. They reasoned that the law in effect did not require filing of a *lis pendens* notice; that the purchasers at the Sheriff's sale had actual notice of Kukar's claim; that Moss was not given notice of the eventual confirmation of sale; and Moss received assurances from opposing counsel that the Sheriff's sale had not been completed. The same two members of the panel found that the respondent's actions with regard to the $10,001 violated DR 6–101(A)(3), DR 1–102, DR 9–102, and Rule 1.4 of the Rules Governing Disciplinary Proceedings. Those two members recommended disbarment.

The minority report found that Moss violated DR 6–101(A)(3) due to his failure to: 1. file a *lis pendens* notice; 2. advise Mrs.

Kukar and the Bar of the status of the $10,001 in early 1988; 3. take steps to secure Kukar's money at the conclusion of the quiet title suit; 4. to write Mrs. Kukar concerning the outcome of the quiet title proceeding and confirm her desire not to appeal; and 5. to keep adequate accounting of his client trust account. The minority report found that Moss repaid the $10,001 promptly after learning in August of 1988 that the money had been deposited into his trust account. The minority report recommended a public reprimand.

### Allegations of Error.

The respondent asserts three procedural errors: (1) that the formal Complaint did not mention DR 9–102 but yet the trial panel found him guilty of violating that provision; (2) that after he "invoked the rule" the investigator for the Bar Association remained in the hearing and later testified; (3) that the respondent was improperly compelled to testify against himself.

### I.

■ The Complaint was adequate. Rule 6.2 of the Rules Governing Disciplinary Proceedings states:

"The complaint shall set forth the specific facts constituting the alleged misconduct, and if prior conduct resulting in discipline, or evidence from prior investigations, is relied upon to enhance discipline, the prior acts or conduct relied upon shall be set forth."

This rule requires that the specific facts be set forth, and does not require the lawyer to be notified of the specific disciplinary rule that such conduct violates.

In the present case the Complaint was specific as to the alleged acts of misconduct.

"26. On September 9, 1982, Respondent deposited the full amount of the voucher, $10,001.00 to his attorney trust account. Respondent thereafter made no disbursements from his trust account to or on behalf of Kathryn Kukar. On December

---

**3.** Kukar resided in California.

10, 1982, Respondent's trust account balance stood at $2,322.66.

27. Respondent eventually closed the attorney trust account without making any disbursements on behalf of Kathryn Kukar."

"30. Respondent never informed his client, Ms. Kukar, of the result of the quiet title action."

These allegations clearly accuse the respondent of receiving funds belonging to Mrs. Kukar, and closing his trust account without paying them to her or anyone on her behalf or notifying her that she was entitled to the funds. DR 9–102 requires a lawyer to promptly notify the client of the receipt of her funds and maintain complete records of all of the client's funds coming into the lawyer's possession. 5 O.S.1981, Ch. 1, App. 3, DR 9–102(B)(1) and (3). The respondent had sufficient notice of the accusation against him.

## II.

Nor was Moss denied a fair hearing by the presence of the investigator for the Bar. In *Clark v. Continental Tank Co.* 744 P.2d 949 (Okl.1987), we noted that the exceptions to the rule of sequestration include the situations when witnesses are allowed to remain in court "where their assistance in management of the case was deemed essential, such as a key law enforcement officer". *Id.* 744 P.2d at 951. The Oklahoma Court of Criminal Appeals has also recognized this exception. *McDade v. State,* 752 P.2d 827 (Okl.Cr. 1988): *Chambers v. State,* 724 P.2d 776 (Okl.Cr.1986).

The rule was invoked at the start of the proceedings. Counsel for the Bar then requested that the investigator be allowed to remain even though he was to be called as a witness for the Bar. Counsel explained that "I expect to rely on him to assist me". Tr. of 4–26–89 at 3. The investigator obtained and examined the respondent's bank records. Counsel's claim that the investigator was to assist him in presenting the case is acceptable. We find no error in allowing the investigator for the Bar Association to remain in the hearing after the rule was invoked, and then later testify in the Bar's case in chief.

## III.

The respondent also claims that he was improperly compelled to testify against himself. The controversy centers on two of the Rules Governing Disciplinary Proceedings, Rules 6.11(d) and 5.2.

Rule 6.11(d) states:

"The respondent may be called as a witness either by the prosecution or on his own behalf, and when called upon to give testimony, the respondent may not decline to answer any relevant question unless he personally states that his answer thereto might disclose matters that are privileged or that would tend to incriminate him *or show him to be guilty of any act or offense that would be grounds for discipline."* 5 O.S.1981, Ch. 1, App. 1–A, Rule 6.11(d). (Emphasis added).

Rule 5.2 states:

"After making such preliminary investigation as the General Counsel may deem appropriate, the General Counsel shall ... file and serve a copy of the grievance ... upon *the lawyer, who shall thereafter make a written response which contains a full and fair disclosure of all the facts and circumstances pertaining to the respondent lawyer's alleged misconduct* unless the respondent's refusal to do so is predicated upon expressed constitutional grounds. Deliberate misrepresentation in such response shall itself be grounds for discipline. The failure of a lawyer to answer within twenty (20) days after service of the grievance (or recital of facts or allegations), or such further time as may be granted by the General Counsel, shall be grounds for discipline...." 5 O.S.1981, Ch. 1, App. 1–A, Rule 5.2 (Emphasis added).

The Bar argued that the respondent's written response to the grievance and his conversations with the Bar investigator during the investigation stage of the proceeding operated as a waiver of his right to refuse to answer questions under

Rule 6.11(d). The Bar's view is not correct. A lawyer must disclose to the Bar Association all facts surrounding a grievance when called upon to submit a written response thereto under Rule 5.2 unless he invokes constitutional grounds for refusing to disclose. If a disclosure under Rule 5.2 constituted a waiver of the right to refuse to answer questions under Rule 6.11(d) then such a right would be meaningless because a lawyer could not invoke Rule 6.11(d) to avoid disclosure of violations of disciplinary rules.

The trial panel took a somewhat different approach. It held that the respondent's previous testimony during the trial panel proceeding without invoking the right not to testify operated as a waiver of his right to refuse to answer questions. Thus, the panel found a "testimonial waiver" of the respondent's rights under Rule 6.11(d). The respondent did *not* invoke the Fifth Amendment, but a discussion of testimonial waiver within the context of the Fifth Amendment privilege against self incrimination illustrates the relevant principles to apply when a lawyer invokes Rule 6.11(d).

The much discussed [4] doctrine of testimonial waiver of the Fifth Amendment right against self-incrimination usually centers around the case of *Rogers v. United States,* 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344 (1951), and the subsequent cases [5] interpreting *Rogers.* In *Rogers,* a witness before a grand jury testified that she had been in possession of the records for the Communist Party of Denver and delivered them to another person. She then asserted the Fifth Amendment and refused to testify as to the identity of the person to whom she had given custody of the records. The Court held that her admission of the deliv-

ery of the records served as a waiver of the Fifth Amendment privilege against incrimination. The Court said: "Disclosure of a fact waives the privilege as to details." *Id.* 340 U.S. at 373, 71 S.Ct. at 442. Other cases so holding are *Garner v. United States,* 424 U.S. 648, 96 S.Ct. 1178, 47 L.Ed.2d 370 (1976), and *United States v. Kordel,* 397 U.S. 1, 90 S.Ct. 763, 25 L.Ed.2d 1 (1970).

Moss was called as witness by the Bar. In testifying he explained in detail the litigation involving the sheriff's sale of Kukar's property and his receipt of and acts concerning the $10,001 voucher.

■ When Moss was then asked if he had searched his trust account records after the Bar investigation began, his counsel objected to that question based upon an assertion of the privilege granted by Rule 6.11(d). The panel then required a personal assertion of the privilege by Moss, who personally asserted that he refused to answer the specific question because his answer would tend to show him to be guilty of an act or offense that would be grounds for discipline. The panel sustained the objection. After further testimony the Bar again called Moss as a witness. Moss then testified to much of the same previous factual matter, again *without asserting his privilege under Rule 6.11(d).* When Moss was asked "Is it your belief then that the Tulsa County voucher was deposited to your trust account September 10th of 1982?" He again invoked the Rule 6.11(d) privilege. The panel found that he had waived his privilege by his prior testimony. We concur.

A respondent in a disciplinary proceeding may be called to testify by the prosecution.

---

4. *See,* Abramson, *Witness Waiver of the Fifth Amendment Privilege: A New Look at an Old Problem:* 41 Okla.L.Rev. 235 (1988); Note, *Testimonial Waiver of the Privilege Against Self–Incrimination,* 92 Harv.L.Rev. 1752 (1979); Note, *Waiver of the Privilege Against Self Incrimination,* 14 Stan.L.Rev. 811 (1962); Comment, *Testimonial Waiver of the Privilege Against Self–Incrimination and Brown v. United States,* 48 Calif.L.Rev. 123 (1960); Note, *Waiver of the Privilege Against Self–Incrimination,* 52 Nw.U.L.Rev. 452 (1957).

5. For example: *See, United States v. Thornton,* 733 F.2d 121, 125 n. 4 (D.C.Cir.1984), (the court noted that "'a witness may not testify as to the broad outlines of a matter and then assert a privilege as to the particulars,'"); *Environmental Defense Fund, Inc. v. Lamphier,* 714 F.2d 331, 339 (4th Cir.1983), (the court stated: "[w]here incriminating facts have been voluntarily revealed, the fifth amendment privilege may not then be invoked to avoid disclosure of the details"); *United States v. James,* 609 F.2d 36, 45 (2d Cir.1979), (same).

Rule 6.11(d). However, when so called, that rule gives the respondent a right to refuse to answer specific questions which answers would tend to show him to be guilty of any act or offense that would be grounds for discipline. A respondent/witness must invoke the privilege after each relevant question presented and the trial panel must make its determination as to whether the invocation of the privilege is proper for that specific question.[6] The mere fact that Moss testified is insufficient to show any waiver.[7] However, his testimony of facts showing a violation of the disciplinary rules is sufficient to find a waiver of his Rule 6.11(d) privilege.

## CONCLUSIONS

Moss did not preserve Kukar's $10,001 in an identifiable separate account. Such conduct violated DR 9–102(A). He testified that he wasn't sure whether the $10,001 went to another client, to himself, or was embezzled (by a former secretary). DR 9–102(B)(3) states that a lawyer shall maintain complete records of all funds of a client coming into the lawyer's possession and render appropriate accounts to his client regarding them. While we do not mandate that a particular procedure for keeping records is required, the respondent's records were obviously insufficient for him to keep track of Kukar's money.

The evidence is sufficient to find that Moss violated DR 9–102(B)(3).

The respondent argued that the $10,001 were not funds belonging to Mrs. Kukar at the time they were deposited into his trust account, because the order vacating the sale ordered them paid to the purchasers. This argument is disingenuous. The respondent did not deposit the funds with the Court Clerk in Creek County pending the outcome of the litigation, nor preserve the funds himself in a separate identifiable account during the suit. Clearly, notwithstanding the argument that the purchasers had the first claim when the funds were delivered to Moss, the $10,001 belonged to Mrs. Kukar when the quiet title suit was resolved in 1984 resulting in loss of her property.

■ The Panel's majority found no disciplinary violation in Moss' belated filing of the *lis pendens* notice. Our review of the evidence shows that Moss did indeed expend a lot of energy attempting to save Kukar's land from her ex-husband's judgment. He had reason to believe the purchasers had actual knowledge of her claim. His representation in this regard was not "indifference in and consistent failure to carry out the obligations which the lawyer has assumed." *See, State ex rel. Oklahoma Bar Association v. Pearson, supra.*

---

6. The Rule provides a privilege to refuse to answer specific relevant questions which would tend to show the violation of a disciplinary Rule. Again we draw from Fifth Amendment principles to illustrate. The Constitution does not prohibit the asking of incriminating questions. *Minnesota v. Murphy*, 465 U.S. 420, 427–428, 104 S.Ct. 1136, 1142–1143, 79 L.Ed.2d 409 (1984). Once the incriminating question is asked the witness must then assert his privilege to the specific question. *Hoffman v. United States*, 341 U.S. 479, 486–487, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951); *See also, In re Grand Jury Subpoena*, 739 F.2d 1354, 1359 (8th Cir.1984); *In re Morganroth*, 718 F.2d 161, 167 (6th Cir. 1983); *United States v. Zappola*, 646 F.2d 48 (2d Cir.1981), *cert. denied*, 459 U.S. 866, 103 S.Ct. 145, 74 L.Ed.2d 122 (1982). However, in some cases a blanket assertion of the privilege might be proper if "there is a reasonable basis for believing a danger to the witness might exist in answering *any* relevant question." *United States v. Thornton*, 733 U.S. 121, 126 n. 4 (D.C. Cir.1984); *United States v. Rodriguez*, 706 F.2d

31 (2d Cir.1983). A witness may not employ the privilege to avoid giving testimony that he simply would prefer not to give. *Roberts v. United States*, 445 U.S. 552, 560 n. 7, 100 S.Ct. 1358, 1364 n. 7, 63 L.Ed.2d 622 (1980). The witness must be confronted by "substantial and 'real,' and not merely trifling or imaginary, hazards of incrimination". *United States v. Apfelbaum*, 445 U.S. 115, 128, 100 S.Ct. 948, 955, 63 L.Ed.2d 250 (1980), [quoting, *Marchetti v. United States*, 390 U.S. 39, 53, 88 S.Ct. 697, 705, 19 L.Ed.2d 889 (1968) ]. The trial court must then determine if the invocation of the privilege is proper for the specific question asked. *Roberts v. United States*, 445 U.S. at 560 n. 7, 100 S.Ct. at 1364 n. 7. *See also, Hoffman v. United States*, 341 U.S. at 486, 71 S.Ct. at 818; and *In re Morganroth, supra.*

7. *See, In re Hitchings*, 850 F.2d 180, 181 (4th Cir.1988), [the court explains and follows *United States v. James*, 609 F.2d 36 (2d Cir.1979) and *McCarthy v. Arndstein*, 262 U.S. 355, 43 S.Ct. 562, 67 L.Ed. 1023 (1923) ].

As did the Professional Responsibility Tribunal, so also do we find an absence of clear and convincing evidence that Moss neglected his client by waiting until May 6, 1982 to file the *lis pendens* notice.

### Discipline

This court has imposed different degrees of punishment in commingling type cases. We have given a public reprimand, *State ex rel. Oklahoma Bar Association v. Dugger*, 385 P.2d 486 (Okl.1963), a ninety day suspension, *State ex rel. Oklahoma Bar Association v. Bruce*, 449 P.2d 894 (Okl.1969), *State ex rel. Oklahoma Bar Association v. Ferguson*, 356 P.2d 734 (Okl.1960), a four month suspension, *State ex rel. Oklahoma Bar Association v. Kamins*, 568 P.2d 627 (Okl.1977), a twelve month suspension, *State ex rel. Oklahoma Bar Association v. Geb*, 494 P.2d 299 (Okl.1972), *State ex rel. Oklahoma Bar Association v. Keeran*, 495 P.2d 399, 401 (Okl.1972), an 18 month suspension, *State ex rel. Oklahoma Bar Association v. Kessler*, 573 P.2d 1214 (Okl. 1978), a two year suspension, *State ex rel. Oklahoma Bar Association v. Hensley*, 560 P.2d 567 (Okl.1977), *State ex rel. Oklahoma Bar Association v. Smith*, 510 P.2d 936 (Okl.1973), *State ex rel. Oklahoma Bar Association v. Lowe*, 640 P.2d 1361 (Okl.1982), and disbarment,[8] *State ex rel. Oklahoma Bar Association v. Burger*, 401 P.2d 524 (Okl.1965), *State ex rel. Oklahoma Bar Association v. Smith*, 615 P.2d 1014 (Okl.1980), *State ex rel. Oklahoma Bar Association v. Moore*, 741 P.2d 445 (Okl.1987), *State ex rel. Oklahoma Bar Association v. Perkins*, 757 P.2d 825 (Okl. 1988), *State ex rel. Oklahoma Bar Association v. Raskin*, 642 P.2d 262 (Okl.1982). These cases involve varying degrees of culpability in the mishandling of clients' funds.

The fact that Moss eventually returned the $10,001 (plus some interest) does not transform his use of those funds from 1984–1988 to something other than commingling. *See, State ex rel. Oklahoma Bar Association v. Lowe*, 640 P.2d 1361, 1363 (Okl.1982), wherein the respondent/lawyer argued that because his

clients' funds were ultimately paid to the proper party no commingling occurred, and we said that such an argument was irrelevant. However, we conclude that that the evidence is clear and convincing that Moss' commingling was the result of sloppy and neglectful record keeping instead of theft by conversion, which would have required disbarment under Rule 1.4(c).

In imposing discipline we note that his handling of Kukar's funds was not an isolated incident involving use of a client's money. There is SCBD # 3536, Count I, which must now be also considered in imposing discipline. We accordingly find that the respondent, William R. Moss, should be suspended from the practice of law for a total period of two years and one day as discipline in SCBD # 3536 and SCBD # 3581, as consolidated, for violating the Disciplinary Rules described herein.

The Bar Association has requested us to assess costs against Moss in the amount of $1,100.15 in case SCBD 3536 and an amount of $2,848.21 in case SCBD 3581. The motions for costs are not opposed, and upon our review we find that the motions should be granted.

IT IS THEREFORE ORDERED THAT William R. Moss shall be suspended from the practice of law for a period of two years and one day from May 8, 1990.

IT IS ALSO ORDERED THAT William R. Moss shall pay costs in the amount of $1,100.15 for costs in SCBD # 3536 and an amount of $2,848.21 in SCBD # 3581, totaling the sum of $3,948.36 in the combined proceedings.

HODGES, DOOLIN and ALMA WILSON, JJ., concur.

KAUGER, J., concurs by reason of stare decisis.

OPALA, Vice Chief Justice, concurring in part and dissenting in part.

I would impose upon the respondent a much more severe disciplinary sanction.

HARGRAVE, C.J., and LAVENDER and SIMMS, JJ., dissent.

---

**8.** Where there is a theft by conversion of a client's funds and a violation of Rule 1.4 that

Rule mandates disbarment. 5 O.S.1981, Ch. 1, App. 1–A, Rule 1.4(c).

SIMMS, Justice, dissenting:

I respectfully dissent. In these consolidated cases, we are addressing two separate, independent acts of co-mingling of funds and conversion. Proof of either could warrant disbarment. Proof of both *should* warrant disbarment.

I am authorized to state that Chief Justice HARGRAVE, Vice Chief Justice OPALA, and Justice LAVENDER join with me in the views expressed herein.